# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRUCE JAKIERRA FUNDERBURK,       )
                                  )
            Plaintiff,            )
                                  )
v.                                )          1:15-CV-275
                                  )
REBECCA COLEY and GARY            )
SELLERS                           )
                                  )
            Defendants.           )

## MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United Sates Magistrate Judge for a recommendation on "Defendants Rebecca J. Coley, RN and Gary Sellers, RN's Motion to Dismiss or, In the Alternative, Answer to Plaintiff's Complaint (special appearance)" (the "Motion to Dismiss") (Docket Entry 15), as well as an order on "Defendants Rebecca J. Coley, RN and Gary Sellers, RN's Motion to Strike Plaintiff's Surreply" (the "Motion to Strike") (Docket Entry 24) and Plaintiff's "Supplement Original Complaint" (the "Motion to Amend") (Docket Entry 17).[1] For the reasons stated herein,

---

[1] Plaintiff's Motion to Amend alleges additional facts and grounds for relief arising out of events that occurred before he filed his original Complaint. (Compare Docket Entry 17, with Docket Entry 2.) As such, the Motion to Amend does not qualify under Federal Rule of Civil Procedure 15(d) as a supplemental pleading, because it does not "set[] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Thus, the undersigned Magistrate Judge will construe the "Supplement Original Complaint" (Docket Entry 17) as a motion to amend the Complaint under Federal Rule of Civil Procedure 15(a), which here requires leave of court as Plaintiff has already amended

Defendants' Motion to Dismiss (Docket Entry 15) should be granted, Defendants' Motion to Strike (Docket Entry 24) is denied as moot, and Plaintiff's Motion to Amend (Docket Entry 17) is denied.

## I.  BACKGROUND

This action arises out of Plaintiff's pro se Complaint against Rebecca Coley and Gary Sellers (collectively, "Defendants"), who are registered nurses assigned to Carolinas Medical Center in Kannapolis, North Carolina ("CMC"). (Docket Entry 2 at 3.) The Complaint alleges that Defendants violated Plaintiff's federal constitutional rights and North Carolina state law by "drawing [a] blood sample from . . . [P]laintiff without first obtaining [a] search warrant[,] . . . . [and] ignored [his] refusal to consent" to the blood withdrawal. (Id. at 3-4.) Plaintiff's Complaint acknowledges that he filed an earlier, related civil action against Brian Lewis Helms, a police officer for the City of Kannapolis ("Officer Helms"), Funderburk v. Helms, No. 1:12CV1266, Docket

---

his Complaint once and has not obtained written consent of Defendants. (See Docket Entries 9, 10, 19.) For the reasons stated in Deberry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *7, n.8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned Magistrate Judge will enter an order, rather than a recommendation, denying the Motion to Amend as futile, see Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) (recognizing futility of amendment as ground for denying motion to amend the complaint), in that the analysis in Subsection II.D. would apply equally to the proposed amendment.

2

Entry 2 (M.D.N.C. 2012) (the "2012 Case"), based on the same facts he alleges in this action. (Docket Entry 2 at 1, 5-9).[2]

Construing Plaintiff's Complaint against the backdrop of the 2012 Case, Plaintiff alleges that, on April 8, 2012, Officer Helms pulled Plaintiff out of his family's basement while looking for a breaking and entering suspect. Funderburk, No. 1:12CV1266, Docket Entry 2 at 3. During Plaintiff's arrest, a police officer came into contact with Plaintiff's blood. Id. Police officers took Plaintiff to CMC to have his blood tested. See id. Plaintiff would not consent to having his blood drawn (Docket Entry 2 at 3), so police officers held Plaintiff down against his will, Funderburk, No. 1:12CV1266, Docket Entry 2 at 3, and Defendants took his blood (Docket Entry 2 at 3).

Ultimately, Plaintiff settled the 2012 Case and executed a Release of All Claims (the "Release Agreement") (id. at 6-7) and Stipulation of Dismissal with Prejudice, voluntarily dismissing the 2012 Case, see Funderburk, No. 1:12CV1266, Docket Entry 41. Plaintiff attached the Release Agreement to his Complaint. (Docket Entry 2 at 6-7.) The Release Agreement provides that Plaintiff

---

[2] As previously explained, "[a]lthough the present Complaint contains few factual allegations, . . . [it] arises from the same incident set out in greater detail in the Complaint in Funderburk v. Helms, No. 1:12CV1266 (M.D.N.C.)." (Docket Entry 3 at 1.) The Court may properly take judicial notice of court documents filed in Plaintiff's previous action. See Clark v. BASF Salaried Emps.' Pension Plan, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004).

3

Case 1:15-cv-00275-WO-LPA Document 26 Filed 12/07/15 Page 3 of 12

> release[s], acquit[s] and forever discharge[s] . . . <u>all other persons</u>, firms, corporations, associations or partnerships of and <u>from any and all claims</u>, actions, causes of action, demands, rights, damages, costs, loss of service, expenses, and compensation whatsoever, <u>which [Plaintiff] now has or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 8th of April, 2012, including those events that are more fully described in the [2012 Case]</u> . . . .

(Id. at 6 (emphasis added).) Nevertheless, here, Plaintiff requests the Court award him $50,000 in compensatory damages and $50,000 in punitive damages from each Defendant for their roles in taking his blood without his consent. (Id. at 4.)

In response, Defendants filed the Motion to Dismiss (Docket Entry 15), which raises several grounds for dismissal.[3] Plaintiff then filed the Motion to Amend (Docket Entry 17), and subsequently responded to Defendants' Motion to Dismiss (Docket Entry 20). Defendants replied. (Docket Entry 22.)

---

[3] Defendants seek dismissal because (1) the Release Agreement bars Plaintiff's claims (Docket Entry 16 at 4-5); (2) North Carolina General Statute Section 20-139.1(c) immunizes Defendants from liability for taking Plaintiff's blood (id. at 5-6); (3) Plaintiff fails to allege enough facts to state a plausible claim against Defendants (id. at 6-9); (4) the defense of qualified immunity shields Defendants from civil liability (id. at 9-11); (5) Plaintiff did not properly perfect service upon Defendants (id. at 11-14); and (6) Plaintiff failed to allege that no adequate state remedy exists to provide relief, as required to state a direct claim under the North Carolina Constitution (id. at 14). Because the Release Agreement disposes of the case, this Memorandum Opinion will only discuss that ground.

4

Thereafter, Plaintiff filed a "Reply to Defendants Rebecca J Coley, RN Gary Sellers RN Reply Brief in Support of Motion to Dismiss" (the "Surreply") (Docket Entry 23) and Defendants filed the Motion to Strike the Surreply (Docket Entry 24). Plaintiff did not respond to Defendants' Motion to Strike. (See Docket Entries dated Aug. 19, 2015, to present.)[4]

## II. DISCUSSION

**A. Legal Standard**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff," Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009), to "determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level," Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir. 2011) (internal citations omitted). Under this standard, "the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe v. City of Charlottesville, Va., 579 F.3d 380, 385–86 (4th Cir. 2009). In that regard, a court must dismiss a

---

[4] Upon careful review, Plaintiff's Surreply (Docket Entry 23) contains no additional arguments or facts that would affect the analysis in Subsection II.D. (see id.). Defendant's Motion to Strike is therefore denied as moot.

5

complaint "if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly,550 U.S. 544, 570 (2007)).

Further, because Plaintiff is a prisoner proceeding in forma pauperis, the Prison Litigation Reform Act (the "Act") "accords judges . . . the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Specifically, the Act authorizes a court to dismiss a case "at any time . . . [it] determines . . . the action . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

Finally, and particularly relevant to this case, when deciding a motion to dismiss, a court may consider documents referenced in and attached to the complaint. Philips, 572 F.3d at 180; see also Bardes v. Massachusetts Mut. Life Ins. Co., 932 F. Supp. 2d 636, 637-38 (M.D.N.C. 2013) ("Because [the] settlement agreement and release was referenced in the complaint and [the plaintiff] does not contest its authenticity, it is appropriate to consider the settlement agreement in connection with the motion to dismiss."). Where the attached documents conflict with the allegations in the complaint, the attached documents prevail. Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

6

**B. Jurisdiction**

Federal district courts have original jurisdiction to hear civil actions that arise under the United States Constitution and federal laws. 28 U.S.C. § 1331. Construed liberally, see Bardes, 932 F. Supp. 2d at 638 (M.D.N.C. 2013) ("[P]*ro se* complaints should be construed liberally." (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), Plaintiff's Complaint alleges at least one claim under a federal statute, Section 1983 of Title 42 of the United States Code, which authorizes actions against persons that violate a citizen's constitutional rights while acting under color of state law. (See Docket Entry 2 at 4.) Specifically, Plaintiff alleges that Defendants acted under the direction of state law enforcement officers when they unconstitutionally seized his blood without consent. (See id. at 3-4.) The Court has jurisdiction over this federal claim. See Schmerber v. California, 384 U.S. 757, 768 (1966) (recognizing Fourth Amendment violation could occur where police took the petitioner's blood without his consent); Hammer v. Gross, 932 F.2d 842 (9th Cir. 1991) (construing section 1983 to encompass allegation that police officer violated Constitution by employing force to extract blood from the plaintiff after his arrest).

To the extent Plaintiff alleges state law claims and violations of his rights under the North Carolina Constitution, the Court may exercise supplemental jurisdiction over those claims

7

because they derive from a common nucleus of operative facts with his federal law claim(s). See 28 U.S.C. § 1367(a); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

**C. Choice of Law**

Because the Release Agreement could serve as a complete bar to Plaintiff's claims, the Court must determine what law applies in construing the Release Agreement. Plaintiff alleges, inter alia, that Defendants violated his rights under the United States Constitution. (Docket Entry 2 at 3-4.) "When a release or a settlement agreement impacts upon significant federal rights or interests, federal common law controls the interpretation of that release or agreement." Coleson v. Inspector Gen. of Dep't of Defense, 721 F. Supp. 763, 766 (E.D. Va. 1989) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 343–48 (1971)); see also Jones v. Taylor, 648 F.2d 1201, 1203 (9th Cir. 1981) ("The conditions affecting the validity of a release of significant federal rights are eminently a matter of federal law, and we find it unnecessary to examine [state] authorities."); Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., 791 F. Supp. 2d 431, 472 (D.S.C. 2011) ("Federal law governs the validity of releases of federal causes of action."). The undersigned Magistrate Judge will therefore apply federal common law in construing the Release Agreement.

8

**D. Release Agreement**

Under federal common law, the parties' intent controls the scope of the release. See Zenith, 401 U.S. at 343–48. "A release of claims under section 1983 is valid only if it results from a decision that is voluntary, deliberate, and informed." Jones, 648 F.3d at 1203 (citing Boyd v. Adams, 513 F.2d 83, 87 (7th Cir. 1975)). "[The] plaintiff has the burden, when seeking to avoid a release, of showing that such avoidance is appropriate." Coleson, 721 F. Supp. at 768.

Plaintiff does not contend that fraud or mutual mistake tainted the Release Agreement, that it lacked adequate consideration, that he signed the Release Agreement under duress or coercion, or that he misunderstood the Release Agreement's contents, see id. (recognizing those grounds for invalidating a release agreement); instead, Plaintiff argues that "an earlier suit will not bar a latter [sic] suit if the factual and legal issue is not the same," and that here, the "person[s] being sued are different . . . [and] were not named in [the 2012 Case], as plaintiffs [or] defendants" (Docket Entry 20 at 4). Plaintiff provides no authority for the view that any difference in the identity of the parties to this case and the 2012 Case make the language of the Release Agreement irrelevant. (See id.)

Although Plaintiff has now sued different people than he sued in the 2012 Case, and he may now allege violations of different

9

laws than before, the Release Agreement bars this action. The Release Agreement's express words provide a clear manifestation of Plaintiff's intent under the Release Agreement. See Coleson, 721 F. Supp. at 768. By its unequivocal terms, the Release Agreement releases "all claims" that Plaintiff may have against any "person[]" "result[ing] from the accident, casualty or event which occurred on or about the 8th of April, 2012, including those events that are more fully described in the [2012 Case]." (Docket Entry 2 at 6.) In these circumstances, Plaintiff clearly intended to release "all claims" that arose out of the events underlying the 2012 Case. (See id.)

The analysis next turns to whether Defendants are "persons" that Plaintiff intended to release under the Release Agreement. Plaintiff's current action sues the "Nurses" from the 2012 Case. (See id. at 3.) In the 2012 Case, Plaintiff maintained that, on April 8, 2012, Officer Helms, along with two other police officers, "held [him] [d]own so Nurses can [sic] take DNA from [his b]ody. [T]here wasnt [sic] a warrant to do so the method was completely wrong. Due process was [n]eeded [b]ut [n]ot [a]pplied." Funderburk, No. 1:12CV1266, Docket Entry 2 at 3 (emphasis added). In this case, Plaintiff proceeds against the "Nurses" whom he alleges took his "blood sample . . . without first obtaining [a] search warrant . . . . ignor[ing] . . . [his] refusal to consent about the constitutional wrongdoing event [that occurred on] April

10

8, 2012." (Docket Entry 2 at 3.) Both actions, therefore, fault the same "Nurses" for contributing to the harm Plaintiff suffered on April 8, 2012. Accordingly, Plaintiff knew of Defendants' involvement in the events of April 8, 2012, when he signed the Release Agreement, which clearly and explicitly discharges all "persons" from all liability related to the April 8, 2012 event. (Id. at 6-7.)

This "language could be no more forceful" in its intent to serve as a bar to Plaintiff's claims against Defendants. Doganieri v. United States, 520 F. Supp. 1093, 1097 (N.D.W. Va. 1981) (construing general release of "all other persons" to bar the plaintiff's claims against the defendant, even though the defendant was not a party to the general release); see also Village of Fox River Grove, Ill. v. Grayhill, Inc., 806 F. Supp. 785, 795 (N.D. Ill. 1992) (holding that, even though the third-party plaintiff was not a party to the general release, the release barred the third-party plaintiff's claims); Coleson, 721 F. Supp. at 767-68 (enforcing general release of all claims the plaintiff may have against anyone concerning his previous employment and termination with the defendant). Consequently, the Release Agreement bars Plaintiff's claims against Defendants in this civil action.

The policy of the federal courts encourages parties to settle their disputes. See Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the

11

courts."); Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1221 (4th Cir. 1976) (recognizing that "settlements [are] encouraged, not discouraged"). Here, Plaintiff does not challenge the validity of the Release Agreement or the knowing and voluntary nature of his entry into it. Accordingly, the Court should conclude that Defendants have shown entitlement to judgment as a matter of law on the face of Plaintiff's pleadings.

### III. CONCLUSION

The Release Agreement bars the instant suit.

**IT IS THEREFORE RECOMMENDED** that Defendants Rebecca J. Coley, RN and Gary Sellers, RN's Motion to Dismiss or, In the Alternative, Answer to Plaintiff's Complaint (special appearance) (Docket Entry 15) be granted and that this action be dismissed with prejudice.

**IT IS ORDERED** that Defendants Rebecca J. Coley, RN and Gary Sellers, RN's Motion to Strike Plaintiff's Surreply (Docket Entry 24) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (Docket Entry 17) is **DENIED.**

        /s/ L. Patrick Auld
        **L. Patrick Auld**
        **United States Magistrate Judge**

December 7, 2015

12

Case 1:15-cv-00275-WO-LPA   Document 26   Filed 12/07/15   Page 12 of 12